***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Glenn and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except for modifications regarding designation of treating physicians and the issue of sanctions.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by parties as:
 STIPULATIONS
1. That all parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At all relevant times herein the employer-employee relationship existed between the defendant-employer and plaintiff.
3. Crawford Company was the workers' compensation carrier on risk at all relevant times herein.
4. Plaintiff's average weekly wages were $1,076.06 per week at all relevant times herein.
5. The issues to be determined from this hearing are as follows:
 a. Whether plaintiff has received treatment from unauthorized physicians and, if so, whether defendants are obligated to pay for the same?
 b. Whether the medical treatment sought by plaintiff is reasonably required to affect a cure, give relief or lessen the period of disability?
 ***********
The Pre-Trial Agreement along with its attachments and any stipulations that have been submitted by the parties are hereby incorporated by reference as though they were fully set out herein.
 ***********
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was a fifty-eight year old woman at the time of the hearing before the Deputy Commissioner with a BA in business administration and an MA in education. Prior to coming to work for defendant-employer, she had worked for ATT as a section chief overseeing over 100 employees for eight years, for Pepsi Cola as a warehouse manager and as a production manager in the microchip industry.
2. Plaintiff was hired by defendant-employer as a manager in training. Upon successful completion of her training, she would have been a terminal manager. Shortly after she was hired, plaintiff sustained an admittedly compensable back injury by accident while in the course and scope of her employment with defendant-employer on December 16, 2000 when she was taking her luggage out of the trunk of a car as she was catching an airplane to return to Raleigh-Durham.
3. Defendants accepted plaintiff's claim pursuant to a Form 60 dated August 8, 2001 which indicated that plaintiff had sustained an injury by accident to her back on December 16, 2000, that her disability had started on May 22, 2001, and since that time, plaintiff continues to receive temporary total disability compensation in the amount of $588.00 per week.
4. Plaintiff was initially treated at Hillandale Medical Center on December 19, 2000 where she was diagnosed with a lumbar strain. She complained of back pain both in the upper and lower back. Plaintiff's condition was treated with conservative measures. When plaintiff continued to complain, she was referred to Triangle Orthopedic Associates.
5. On January 18, 2001 plaintiff was initially seen and treated at Triangle Orthopedic Associates by Debra Holmes, PA who noted that plaintiff complained of unabated lower back pain with radiation of pain up her entire back. Plaintiff was diagnosed with a lumbar and cervical strain, continued in physical therapy, and given medication. Cervical traction was recommended. She was then referred to Dr. Raphael Orenstein, a rehabilitation medicine specialist, also at Triangle Orthopedic Associates.
6. Dr. Orenstein first saw plaintiff on February 2, 2001, at which time he noted that plaintiff was complaining of pain in the right side of the neck through the upper back into the flanks, low back pain down the right, more so than the left leg following a lifting injury on December 16, 2000. Plaintiff also indicated that she just hurt all over. Dr. Orenstein treated plaintiff's condition with conservative means, including therapy, medication and chiropractic care. Dr. Orenstein recommended plaintiff to return to work with modified duty. Plaintiff reported her pain was worse and involved her "entire body." In fact, she requested a restriction of no driving because she said she had pain while driving. Thus, on March 13, 2001 at plaintiff's request, Dr. Orenstein recommended plaintiff continue not driving until a more comprehensive evaluation of her driving capacity was conducted. However, he indicated there was no medical reason for her not to be able to drive. She was to continue working four hours per day increasing her time at work by adding an hour every other week until an eight hour work day was reached. Dr. Orenstein noted there was no nerve impingement to explain plaintiff's symptoms and by June 26, 2001 he noted there were non-organic signs by examination, symptom magnification and inconsistencies between the examination and her observed conduct. Further, on August 16, 2002 she came to Dr. Orenstein's appointment in a wheelchair, which he had not prescribed and which was not medically necessary. She also carried a cane and a doughnut pillow.
7. When plaintiff did not respond to the treatment, Dr. Orenstein had recommended that she attend the Triangle Regional Interdisciplinary Pain Program (TRIPP) located at Triangle Orthopaedic Associates. The program was an intensive four week program headed by a pain psychologist and phyziatrist geared to change a patient's attitude toward pain. In response to this recommendation, defendants provided plaintiff with a phyziatrist to conduct an independent medical evaluation.
8. Plaintiff was evaluated by Dr. Scott S. Sanitate on April 11, 2001 for an independent evaluation of her medical condition. Dr. Sanitate was of the opinion that plaintiff's physical exam revealed non-organic symptom-magnified responses and he concluded she had reached maximum medical improvement and was able to return to work. He could not find any organic cause for plaintiff's medical condition and determined that her symptoms were not consistent with the described injury. He felt plaintiff had reached maximum medical improvement and did not warrant assignment of an impairment rating. Dr. Orenstein agreed with Dr. Sanitate's overall exam and conclusions, but felt rather than only easing her back into work, she should first complete an interdisplinary pain program. Based upon the expert medical opinion of Dr. Sanitate, defendants did not authorize the TRIPP program but continued to provide treatment by the authorized treating physician. Had plaintiff wished to object to this denial, her recourse was to file a motion with the Executive Secretary, which she did not do.
9. During the time that plaintiff continued to receive treatment from the authorized treating physician, plaintiff located an osteopath via the internet and on April 24, 2001 received treatment on her own from Dr. Thomas Motyka, an osteopathic consultant at UNC Hospitals, who diagnosed plaintiff's condition as myofascial pain syndrome and fibromyalgia. He was of the opinion that her condition was caused by her injury of December 16, 2000 because the pain that she was suffering when she came to see him sixteen months later started immediately after her injury. Dr. Motyka is of the opinion that plaintiff has not reached maximum medical improvement and that she is in need of additional medical treatment as a direct result of her work-related injury.
10. Dr. Orenstein disagreed with Dr. Motyka's diagnosis of fibromyalgia, though they both agreed plaintiff would respond better once the workers' compensation claim was over. He also disagreed with Dr. Motyka because he felt plaintiff had reached maximum medical improvement. He later gave the opinion that in retrospect the treatment provided plaintiff by Dr. Motyka for the limited period from April 24, 2001 through June 26, 2001 was not necessarily inconsistent with the type of chiropractic treatment he had recommended and thus, was reasonable and necessary. However, as of June 26, 2001 Dr. Orenstein did not recommend any further chiropractic manipulation or osteopathic treatment. Even Dr. Motyka indicated on February 27, 2002 that osteopathic treatment had not been helpful and resulted in no improvement. Further, Dr. Orenstein's appointment on August 16, 2002 did not result in any further treatment recommendations.
11. Though she received unauthorized treatment from Dr. Motyka beginning on April 24, 2001, plaintiff did not request Industrial Commission approval of the treatment until a Motion was filed May 15, 2002, almost one year later. Plaintiff, who was represented by counsel, had ample opportunity to request approval earlier as numerous forms and Motions were filed during this time and the circumstances involved did not constitute and emergency situation, especially in light of the treatment being provided.
12. Based upon Dr. Orenstein's findings of no objective causes for plaintiff's extensive and growing set of complaints, inconsistencies between the examination and her observed conduct and his suggestions for a review by a psychologist and phyziatrist, defendants were reasonable in obtaining an evaluation from Dr. Sanitate who is a phyziatrist. In fact, Dr. Sanitate opinions coupled with Dr. Orenstein's conclusions further support defendants' decision not to approve referral to a pain clinic or the treatment plaintiff sought on her own from Dr. Motyka while under the care of Dr. Orenstein. Even Dr. Motyka's assessment is that his osteopathic treatment was not helpful. When there exists a reasonable disagreement between the parties regarding appropriate and reasonable medical treatment, the remedy is for the aggrieved party to file a motion with the Executive Secretary's office. This was not done in this case and, further, even a motion to approve Dr. Motyka's treatment was not timely filed as plaintiff who was represented by counsel took no action for over a year.
13. There were substantial questions of both law and fact regarding medical treatment in this matter and the defense of their action was reasonable.
 ***********
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an admittedly compensable injury by accident while in the course and scope of employment with defendant-employer on December 16, 2000, for which plaintiff is entitled to receive benefits under the Workers' Compensation Act. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff's average weekly wages at the time of her injury by accident were $1,076.06 per week, yielding a compensation rate of $588.00 per week. Defendants have paid plaintiff and are continuing to pay for all periods of disability at the rate of $588.00 per week and are entitled to a credit for all benefits previously paid to plaintiff. N.C. Gen. Stat. § 97-2(5).
3. Plaintiff is entitled to have the defendants pay for all medical treatments that are related to her compensable back injury so long as such treatments may reasonably be required to effect a cure, give relief and will tend to lessen plaintiff's disability. This includes reimbursement of past medical expenses plaintiff has incurred that have not been paid by defendants for Dr. Motyka's treatment, but only for the period from April 24, 2001 through June 26, 2001. N.C. Gen. Stat. § 97-25.
4. Defendants did not unreasonably refuse to provide the reasonable and necessary medical treatment as prescribed by plaintiff's authorized treating physician and thus, should not be subject to sanctions. N.C. Gen. Stat. § 97-25. Industrial Commission Rule 802.
5. Since the defense of the medical claims was reasonable and not based on stubborn, unfounded litigiousness, plaintiff is not entitled to attorney's fees pursuant to N.C. Gen. Stat. §97-88.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fees hereinafter approved, defendants shall pay to plaintiff total disability benefits at the rate of $588.00 per week beginning December 16, 2000, for periods plaintiff was out of work due to her injuries, and continuing until plaintiff has returned to work earning the same or greater wages as she was earning at the time of her disability or further orders of the Industrial Commission. All sums that have accrued shall be paid to plaintiff in a lump sum. Defendants shall receive credit for all benefits previously paid to plaintiff.
2. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff as a result of the compensable injury for so long as such evaluations, treatments and examinations may reasonably be required to effect a cure, give relief and/or lessen plaintiff's period of disability, which includes Dr. Motyka's expenses for the limited period from April 24, 2001 through June 26, 2001.
3. Drs. Thomas Motyka and Raphael S. Orenstein are no longer approved as plaintiff's treating physicians.
4. A reasonable attorney's fee in the amount of 25 percent of the ongoing compensation awarded for plaintiff is approved and allowed for plaintiff's counsel. The attorney's fee shall be deducted from the compensation due plaintiff and shall be paid directly to plaintiff's counsel.
5. Defendants shall pay the costs of this action.
 ORDER
Plaintiff is referred, at defendants' expense, to Katherine Lawrence, D.O. of Carolina Back Institute, a multidisciplinary pain clinic, for evaluation to determine if plaintiff is a candidate for their "Prevail Program" or for other treatment within the practice. Industrial Commission Nurse, Karen Smith is requested to make the initial arrangements at the facility as soon as practicable. N.C. Gen. Stat. § 97-25.
This the 30th day of July 2004.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/_____________ PAMELA T. YOUNG COMMISSIONER
DCS/mb